No. 86-20

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

IN THE MATTER OF S.B., Youth in
Need of Care.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Morin & Collins; Colleen Collins, Billings, Montana

For Respondent:

Harold Hanser, County Attorney, Billings, Montana
Greg Mullowney, Deputy County Attorney, Billings
Olsen, Christensen & Gannett; Damon Gannett,
Billings, Montana

---

Submitted on Briefs:   March 28, 1986

Decided:  August 21, 1986

Filed AUG 21 1986

Ethel M. Harrison
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

B.R. (the mother) appeals a Yellowstone County District Court order which terminates her parental rights to her daughter S.B. and awards custody to the Montana Department of Social and Rehabilitative Services (SRS). The sole issue on appeal is the sufficiency of the evidence to support the court's order. We affirm.

In February 1984 appellant gave birth to a daughter, S.B. Appellant and the putative natural father of S.B. were divorced prior to the birth. The child had some health problems from birth. She was underweight and a poor eater, initially had some kidney problems, had club feet, and had problems with gastroesophageal reflux (food regurgitation). The child was hospitalized for about three weeks after birth and was released. Approximately three to four weeks later, S.B. was re-hospitalized and Doctor Sauer, a pediatrician, diagnosed S.B. for a "failure to thrive," i.e., a failure to maintain either normal height, normal weight, or a combination of both, in comparison to standardized charts. Doctor Sauer also termed S.B. hypotonic (low muscle tone), which he described as a child who was extremely "floppy" with almost no strength. After being re-hospitalized S.B. gained a suitable amount of weight in the hospital.

Appellant has a history of mental problems and has at least twice attempted suicide. Dr. Donna Veraldi, a licensed clinical psychologist, twice evaluated appellant and testified that appellant has a schizotypal personality disorder which would be present throughout her lifetime. The doctor added that such a disorder is acquired over a long period of time and is difficult to treat in therapy.

In March 1984 when S.B. was discharged from the hospital, Lori Freck, a registered nurse with the Yellowstone City-County Health Department, began working with S.B. and appellant. Freck instructed appellant in parenting skills, basic infant care and health care. She felt the child was not consuming enough formula and that the mother was not feeding the child as instructed.

The Montana Center for Handicapped Children (the Center) evaluated S.B. in June 1984, November 1984, and March 1985. In June 1984 when S.B. was approximately four months old, the Center diagnosed S.B. as having a high risk for developmental delay. The Center found that S.B. was 20% underweight for her height. The Center also found an overall developmental gross motor delay and a one to two month delay in her functional abilities.

In August 1984 SRS filed a petition for temporary investigative authority and protective services in regards to S.B. The Youth Court granted SRS temporary investigative authority over S.B. for a period of 90 days. Also in August 1984 S.B. was placed in foster care part of each week and with her mother part of each week.

In November 1984 when S.B. was approximately nine months old, the Center diagnosed S.B. as having a failure to thrive and developmental delays. The Center found that S.B. was four to six months behind in her communication skills, that S.B. was below the fifth percentile in weight for age and in weight for height, that S.B. was 18% underweight for height, and that S.B. performed tests at a mental age of 5½ months which indicated a significant delay in cognitive skills.

3

In November 1984 SRS filed a motion to extend the order for temporary investigative authority and protective services. The Youth Court granted the motion for extension. In February 1985 SRS filed a petition for permanent custody and authority to assent to adoption.

In March 1985 when S.B. was thirteen months old, the Center again diagnosed S.B. as having a failure to thrive and developmental delays. The Center found that S.B. functioned at a 6¼ month level in a motor development test, that S.B. had made a four month improvement in gross motor skills in the last nine months, that S.B.'s language skills were from three to five months behind, that S.B. was 16% underweight for her height, that her weight was below the fifth percentile, and that S.B. had an approximate mental age of thirteen months.

Also in March 1985, appellant entered into a service treatment agreement with the county children's services agency. The Youth Court approved the service treatment agreement which was signed by appellant and by a social worker. In April 1985 the named putative natural father filed an affidavit denying paternity and consenting to the termination of his parental rights. In July 1985 the Yellowstone County District Court held a hearing on the SRS petition for permanent custody.

Dr. Sauer, two social workers who had worked with appellant, and an early intervention specialist from a local school district testified at the hearing. They stated that appellant did not progress adequately in parenting classes, or follow recommendations of professionals involved with S.B., that appellant could not adequately care for S.B. at the present time, and that appellant's condition and

4

parenting ability, which rendered her an unfit parent, were unlikely to change in the near future.

In August 1985 the District Court filed its findings of fact, conclusions of law, order and judgment which granted permanent custody, and the right to assent to adoption, to SRS and terminated the parental rights of the natural parents of S.B. The mother appeals.

In discussing the standard of review applicable to cases of this nature, we have stated:

> . . . This Court is mindful that the primary duty of deciding the proper custody of children is the task of the district court. As a result, all reasonable presumptions as to the correctness of the determination by the district court will be made . . . Due to this presumption of correctness, the district court's findings will not be disturbed unless there is a mistake of law or a finding of fact not supported by credible evidence that would amount to a clear abuse of discretion. [Citations omitted.]

Matter of C.A.R. (Mont. 1984), 693 P.2d 1214, 1218, 41 St.Rep. 2395, 2398-2399. However, the State must demonstrate by clear and convincing evidence that the statutory criteria for termination of parental rights have been met before such termination may be ordered. Matter of C.A.R., 693 P.2d at 1219.

The statutory criteria for termination of parental rights under § 41-3-609(1), MCA, are that:

> A court may order a termination of a parent-child legal relationship upon finding that the child has been adjudicated a youth in need of care, and (1) an appropriate treatment plan approved by the court has not been complied with, and (2) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

5

Matter of R.J.W. (1982), 197 Mont. 286, 288-289, 642 P.2d 1072, 1074.

Section 41-3-102(11), MCA, defines a youth in need of care as a "youth who is dependent, abused, or neglected as defined in this section." Section 41-3-102(2) states that:

> An "abused or neglected child" means a child whose normal physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of his parent or other person responsible for his welfare.

A further definition relevant to the instant case is § 41-3-102(3), MCA, which defines "harm to a child's health or welfare" as:

> . . . the harm that occurs whenever the parent or other person responsible for the child's welfare:
>
> (a) inflicts or allows to be inflicted upon the child physical or mental injury, including injuries sustained as a result of excessive corporal punishment;
>
> . . .
>
> (c) causes failure to thrive or otherwise fails to supply the child with adequate food or fails to supply clothing, shelter, education, or health care, though financially able to do so or offered financial or other reasonable means to do so;

The type of inquiry contemplated by § 41-3-102(3)(a), MCA, includes "'the commission or omission of any act or acts which materially affects the normal physical or emotional development of a youth.'" Matter of C.A.R., 693 P.2d at 1220; quoting In the Matter of M.R.L. (1980), 186 Mont. 468, 471, 608 P.2d 134, 136.

In the instant case, credible evidence establishes the three prerequisites required to terminate the parental rights of appellant. Dr. Sauer and the Montana Center for Handicapped Children both diagnosed S.B. as a "failure to

6

thrive" baby. That diagnosis reflected a continuing condition which was present shortly after birth, at nine months of age and at thirteen months of age. There was also testimony that (1) appellant was careless in feeding the baby, (2) appellant did not follow the recommendations of health care professionals, (3) appellant missed many appointments and classes with professionals teaching her parenting skills, and (4) appellant could not adequately care for her child. Thus, there is substantial, credible evidence to support a finding that S.B. is a youth in need of care under the statutory definitions.

The second requirement to terminate appellant's parental rights is that a court-approved treatment plan must have been unsuccessful or not complied with. One of the social workers testified that the court-approved service treatment agreement was not a success. The agreement itself, with appellant's signature thereon, was introduced into evidence. Substantial, credible evidence also supports the court's finding that this requirement was met.

Finally, we also uphold the lower court's finding that appellant's conduct or condition rendering her unfit to provide adequate parental care is unlikely to change within a reasonable time. After many months of parenting classes and instruction, appellant was still unable to adequately care for S.B. A social worker familiar with appellant's parenting skills opined that appellant's conduct would not change in the foreseeable future. Moreover, the clinical psychologist stated that appellant's personality disorder would be present throughout appellant's lifetime and was difficult to treat in therapy. In sum, there is substantial, credible evidence to

7

support the finding of the third and last requirement to terminate parental rights.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices