No. 92-609

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN THE MATTER OF DECLARING N.R.M.,

A Youth In Need Of Care.

FILED

NOV 16 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

               Chris P. Christensen, Attorney at Law,
               Kalispell, Montana

        For Respondent:

               Randy K. Schwickert, Deputy Flathead County
               Attorney, Kalispell, Montana


                        Submitted on Briefs:   August 5, 1993

                                  Decided:   November 16, 1993

Filed:

                        _Ed Smith_

                        Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal from an order of the Eleventh Judicial District Court, Flathead County, declaring N.R.M. a youth in need of care, terminating the parental rights of the natural mother, and awarding permanent legal custody of N.R.M. to the Montana Department of Family Services (DFS).

We affirm.

The mother presents the following issues on appeal:

1.   Was there substantial evidence to support the District Court's order terminating the parental rights of the mother?

2.   Did the District Court abuse its discretion when it denied the mother's request to reopen the case to submit additional evidence?

N.R.M. was born on April 23, 1991. He is the son of J.M.C. (natural mother) and M.E.S. (natural father). In June 1991, the DFS began receiving referrals on the mother stating that she left the baby with anyone she could find, she was drinking and partying, and was not taking care of N.R.M.'s medical needs. On October 3, 1991, the DFS filed a petition for temporary investigative authority with the District Court. The District Court found N.R.M. to be a youth in need of care.

The DFS and the mother developed a Treatment Plan on July 1, 1991. However, the plan was not presented to the court for approval. The plan, which listed several goals for the mother, was

developed by the DFS to remedy the mother's conduct. She agreed to receive substance abuse treatment, to abstain from alcohol or drugs, to obtain an evaluation at the Chemical Dependency Clinic, to participate in parenting classes, to establish a stable home environment, and to check into obtaining a GED when N.R.M. reached six months of age. The mother did not complete this plan.

Soon after implementation of the plan, the DFS received referrals that the mother sexually abused four children. As a result, the DFS placed N.R.M. in foster care with the mother's consent during the sexual abuse investigation. While he was in foster care, the foster parents discovered that N.R.M. suffered from a condition known as tracheal malacia which makes him susceptible to infections and requires careful attention. N.R.M. also had an ear infection and a serious diaper rash. The mother denied that the child suffered from any medical problems. She stated that the doctors could not diagnose the tracheal malacia condition, when in fact they had properly diagnosed the child and prescribed medication which the mother failed to administer. Since placing N.R.M. in foster care, his condition has improved.

During the early period of N.R.M.'s foster placement, the mother exercised inconsistent visitation. When visitation did occur, the child screamed in response to the mother's contact. This reaction was limited to the mother. The DFS stopped visitation at the house of the foster parents because the mother

3

demonstrated a hostile and critical attitude and behavior toward the foster parents.

During the early stages of the mother's chemical dependency evaluation, her participation in treatment programs was sporadic and ineffective. She failed to stay sober, and did not properly attend all of her out-patient meetings.

On February 18, 1992, the mother signed a new treatment plan. Although the District Court approved the plan on February 19, 1992, the DFS and the mother worked together with the plan for five months before approval. This plan required the mother to complete an in-patient drug/alcohol treatment program, attend Aftercare, AA meetings, and abstain from alcohol and drugs. The plan required her to complete a sex offender evaluation, establish a stable home environment for the child, complete parenting classes, and obtain a valid driver's license. Finally, the plan required the mother not to let people move in and out of the home, to have weekly contacts with a social worker, to maintain regular supervised visits with N.R.M., and to remain law abiding. The court required the mother to complete the plan by June 1, 1992.

During the two plans, the mother made five attempts for treatment of her alcohol and drug abuse, but was unsuccessful. Before leaving on her fifth attempt at treatment, the authorities arrested the mother for possession of drug paraphernalia, possession of alcohol, and possession of dangerous drugs. Throughout the course of her treatment plan the mother continued to

4

drink and possess illegal drugs. Since the DFS initiated proceedings to terminate the mother's parental rights, she has completed a treatment course for her substance abuse.

Because of the mother's failure to complete both treatment plans, the DFS filed for termination of parental rights and permanent custody on June 16, 1992. The court appointed counsel for the mother, and a hearing was held on September 29, 1992. The natural father did not appear at the hearing. On October 9, 1992, the District Court issued its order terminating the parental rights of the natural parents and granting permanent legal custody to DFS. The mother filed a motion to reconsider, which the court denied. The mother appeals from the decision terminating her parental rights.

I.

Was there substantial evidence to support the District Court's order terminating the parental rights of the mother?

The mother does not argue that she fully completed the February 19, 1992, court-approved plan by the date of the hearing. She contends that the District Court did not satisfy the statutory requirement that her conduct or condition causing her problems could not be rectified within a reasonable time. She argues that the court only gave her three months to complete the approved treatment plan.

Section 41-3-609, MCA, contains the criteria for terminating parental rights. The statute states in pertinent part:

5

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:

. . . .

(c) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; or

(d) the parent has failed to successfully complete a treatment plan approved by the court within the time periods allowed for the child to be in foster care under 41-3-410 unless it orders other permanent legal custody under 41-3-410.

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:

. . . .

(d) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child;

. . . .

(g) any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

The State must show by clear and convincing evidence that the statutory criteria for termination of parental rights has been met

6

before the court can order the termination. Matter of S.B. (1986), 223 Mont. 36, 39, 724 P.2d 168, 170. We will not overturn a district court's findings of fact supported by substantial evidence contained in the record. Matter of S.B., 724 P.2d at 170.

Here, the mother had 13 months from the date she signed the first treatment plan until the termination of her parental rights to complete at least one of the treatment plans. In his report, the court-appointed counsel for N.R.M. stated that an additional two months would not aid in determining whether the mother could take adequate care of N.R.M. on a long term basis. Counsel expressed concern relating to the mother's inconsistent statements about attending AA meetings. He stated that N.R.M. needs a stable home environment and that it was not in the child's best interest to wait to see if the mother completed the treatment plan. He recommended termination of parental rights.

The court noted that the mother completed the in-patient treatment portion of the treatment plan, but recognized that it had come at such a late stage that there was insufficient time to decide whether she would maintain sobriety. The court also stressed the repeated efforts made by DFS to help and encourage the mother to comply with the treatment plan, and that despite those efforts, the mother did not respond in a sincere or timely manner. The court concluded that it was not a reasonable prospect that the mother would maintain sobriety for the benefit of N.R.M. or herself.

Finally, the mother did not comply with other elements of the treatment plan. At the time of the hearing, she lived with a person who was physically abusive to her and she still maintained relationships with chemical and alcohol abusers. With her arrest for possession of dangerous drugs, she failed to remain law abiding. Although her visitations with N.R.M. improved with time, they were interrupted occasionally when she spent time in jail. In addition, she failed to obtain a valid driver's license, failed to successfully complete parenting classes, and failed to make weekly contacts with her social worker. The District Court found that given the abuse, neglect, and exposure to alcohol and drugs, as testified to by the maternal grandmother, the mother has dim prospects of providing a caring and stable home environment. We agree with the court that no evidence exists to show that the mother will succeed in accomplishing a plan in the future. We hold that the record contained substantial evidence for the District Court to terminate the parental rights of the mother.

II.

Did the District Court abuse its discretion when it denied the mother's request to reopen the case to submit additional evidence?

The mother filed her motion for reconsideration on October 21, 1992. She filed her notice of appeal on November 25, 1992, before the District Court issued an order regarding the motion to consider. We have previously stated that "[o]nce the plaintiff filed his notice of appeal all proceedings in the District Court

8

were stayed and its jurisdiction removed." Groundwater v. Wright (1979), 180 Mont. 27, 32, 588 P.2d 1003, 1005-06. Here, the District Court lost jurisdiction when the mother filed her appeal. As a result, the District Court did not issue a decision regarding the motion for reconsideration. Therefore, we will not discuss the issue.

We affirm the decision of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

November 16, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

CHRIS P. CHRISTENSEN
Attorney at Law
P.O. Box 1954
Kalispell, MT 59903-1954

RANDY K. SCHWICKERT
Deputy County Attorney
P.O. Box 1516
Kalispell, MT 59903-1516

ROBERT B. ALLISON
Attorney at Law
130 Fifth Street East
Kalispell, MT 59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy