No. 79-29

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN THE MATTER OF DECLARING M.R.L.
Youth in Need of Care.

---

Appeal from:   District Court of the Eleventh Judicial District,
               In and For the County of Flathead.
               Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

        Daley, Sherlock & Nardi, Kalispell, Montana
        Pat Sherlock argued and Stephen Nardi argued,
         Kalispell, Montana

    For Respondents:

        Ted Lympus, County Attorney, Kalispell, Montana
        Randy Schwickert argued, Deputy County Attorney,
         Kalispell, Montana
        Robert B. Allison argued, Kalispell, Montana

---

                            Submitted:  February 26, 1980

                       Decided: MAR 2 4 1980

Filed: MAR 2 4 1980


_____
                        Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The natural mother of M.R.L. (herein referred to as child) appeals from the order and judgment of the Flathead County District Court declaring the child to be a youth in need of care, and awarding permanent custody of the child to the Department of Social and Rehabilitation Services (herein referred to as SRS), with authority to consent to adoption.

The natural mother contends first, that the State failed to show through clear and convincing evidence that the child had been abused or neglected; and second, that to permanently deprive her of the custody of her child is too harsh a remedy, and that the better remedy is to allow her and the child to enroll in the Single Mother Program at the Florence Crittenton Home in Helena, Montana. The facts, however, fully support the trial court's decision.

The child involved in this matter is 1 1/2 years of age. On October 28, 1977, the natural mother enrolled in the Teenage Pregnancy Project of the Flathead County Health Department (herein referred to as Project); at which time she was 16 years old, unmarried, and 13 1/2 weeks pregnant. The Project offered the natural mother prenatal classes, labor and delivery classes, the WIC nutritional program, free medical services, a physician grant to offset the cost of her pregnancy, A.D.C. and Medicaid. The natural mother participated in these programs and often sought the assistance and guidance of welfare department personnel; however, during the child's first nine months of life her physical condition deteriorated and she suffered from many infections and ailments, all while in the care of the natural mother.

On February 1, 1979, the Flathead County Department of Public Welfare petitioned the District Court for, and was

-2-

granted an order authorizing temporary investigative authority and protective services. On April 10, 1979, the SRS filed a petition in District Court seeking a decree declaring the child to be a youth in need of care, with her permanent custody being awarded to the State of Montana, with authority to consent to adoption. Notice of the petition and hearing were duly issued to the natural mother and father.

On July 9, 1979, a hearing was held, and the natural mother appeared and was represented by counsel. An attorney appeared on behalf of the child, having been appointed counsel for the child. The SRS appeared and was represented by the Flathead County Attorney. The natural father, served with notice by publication, failed to appear and his default was entered.

On July 11, 1979, the District Court entered its findings of fact, conclusions of law and decree. The District Court granted the SRS petition, declaring the child to be a youth in need of care, terminating the natural mother's parental rights, and awarding permanent custody of the child to the SRS with authority to consent to adoption. On July 18, 1979, the natural mother filed motions to amend the findings of fact, conclusions of law, decree and for a new trial; which were denied by the District Court on August 8, 1979. As a result of the District Court order, the parental rights of the natural mother were terminated, and this appeal followed.

Although section 41-3-101, et seq., MCA, was amended by the legislature in 1979, the former statutory scheme contained in section 41-3-101, et seq., MCA (1978), is controlling in the instant case.

Under section 41-3-102(2)(a), MCA, the commission or omission of any act or acts which materially affects the normal physical or emotional development of a youth constitutes

-3-

abuse or neglect. Section 41-3-102(4), MCA provides that a youth who is dependent or is suffering from abuse or neglect is a youth in need of care. Under section 41-3-102 (2)(a), MCA, a youth's "failure to thrive" is presumed to be nonaccidental and to materially affect the normal development of the youth. Section 41-3-404, MCA requires the District Court to hold a hearing and determine whether the youth is an abused, neglected, or dependent child, and to determine the cause.

The natural mother contends that the state failed to establish through clear and convincing evidence that the child was abused or neglected. When the child was born, her weight for age placed her in the 50th percentile and her length for age placed her in the 75th percentile. While in the care of the natural mother, the child's rate of growth and development gradually declined until at six months of age, her weight for age had dropped to the 10th percentile and the child's length for age had dropped to the 50th percentile. At nine months of age, the child's weight for age had dropped below the 5th percentile and her length for age had dropped below the 35th percentile.

During the child's first nine months of life, while in the care of the natural mother, the child suffered from a number of ailments including: fever, vomiting, diarrhea, yeast infection in her mouth and on her lips, infection of her middle ear, severe case of diaper rash, a cough, congestion, and at one time was hospitalized for a gastrointestinal infection. Additionally, during this same period of time the child was having problems with eating and sleeping. The family physician testified that there was no physical or congenital condition suffered by the child which would prolong the various infections.

-4-

The family physician and a nurse both diagnosed a "failure to thrive". The physician testified that the child was beginning to suffer from a "failure to thrive" while in the care of the natural mother, but that the decline stopped once the child was placed in foster care. Within a period of two months following placement in foster care, the child's various ailments disappeared and her weight increased from the 5th percentile to the 50th percentile. In June 1979, approximately four months after placement in foster care, the child's condition had dramatically improved.

The evidence clearly established that the child "failed to thrive" while in the care of the natural mother. A physician, nurses, and Welfare Department personnel all testified that the child was failing to thrive. The child's physical condition deteriorated while in the care of the natural mother. However, the child's condition improved dramatically while in foster care. The District Court's finding and conclusion that the child was a neglected child, pursuant to section 41-3-102(2)(a), MCA, is supported by "clear and convincing" evidence.

Upon a finding that a child is dependent, neglected, or abused, section 41-3-406(1)(b)(ii), MCA, permits the District Court to transfer legal custody to the SRS, which, of course, was done in this case. There was substantial credible evidence in the record to justify the District Court order permanently depriving the natural mother of the child.

This Court has recognized that family integrity is a constitutionally protected interest. Matter of J.L.B. (1979), _____ Mont. _____, 594 P.2d 1127, 1132, 36 St.Rep. 896, 902; Matter of Guardianship of Doney (1977), _____ Mont. _____, 570 P.2d 575, 34 St.Rep. 1107. The declaration of

-5-

policy which accompanies the statutes governing termination places emphasis on the preservation of family unity whenever possible (section 41-3-101(1)(d), MCA). We have also noted, however, that family unity need not be preserved at the expense of the child's best interests. In Re M.A.M. (1979), _____ Mont. _____, 600 P.2d 203, 205, 36 St.Rep. 1680, 1682; Matter of J.J.S., (1978), _____ Mont. _____, 577 P.2d 378, 35 St.Rep. 394.

The natural mother contends that permanently depriving her of the custody of the child is too harsh a remedy. However, all of the evidence presented at the hearing indicated that the child, from the time of her birth until the foster placement at nine months of age, had simply deteriorated to a degree that was totally inconsistent with proper parenting. The child thrived while in foster care, and all of the illnesses were resolved when the child was out of the care of the natural mother.

The natural mother contends that the better remedy is to allow her and the child to enroll in the Florence Crittenton Home where she could receive education in nutrition, information and necessary training relating to the general care of the child. However, that is precisely what was provided to her for fifteen months by various agencies and Welfare Department personnel, all without success. The natural mother's request for enrollment in the Florence Crittenton Home comes too late. The best interests of the child oppose further experimentation and delay.

Based upon the totality of the circumstances in the instant case, we cannot find an abuse of discretion in the District Court decision to award permanent custody of the child to the SRS, with authority to consent to adoption.

The judgment of the District Court is affirmed.

-6-

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
              Justices

-7-