No. 81-536

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

IN THE MATTER OF DECLARING
K.V. and K.A., Youth in need of care.

_____

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

A. Michael Salvagni, Bozeman, Montana

For Respondent:

Donald E. White, County Attorney, Bozeman,
Montana,

_____

Submitted on Briefs: May 20, 1982

Decided: August 23, 1982

Filed: AUG 23 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This is an appeal from an Eighteenth Judicial District Court order declaring KA to be a youth in need of care and granting Gallatin County Social and Rehabilitation Services (SRS) permanent custody of KA with the right to consent to adoption.

The issue presented on appeal is whether the District Court abused its discretion by terminating the parental rights of appellant and awarding permanent custody to SRS.

Appellant is the mother of two children, KV and KA. Appellant and KV's natural father are divorced and KV currently resides in California with her father under a previous court order in a collateral matter. KA's natural father is deceased. Only KA's custody is at issue on appeal.

Appellant contends that the evidence submitted at trial was insufficient to justify the harsh sanction of granting permanent custody to SRS. She claims that there was no evidence presented by SRS to show that the child's mental health had been harmed by acts or omissions of appellant.

We do not find that to be the case. The record reveals clear and convincing evidence to prove that KA is a neglected child and it is in his best interests that appellant's parental rights be severed. No more is required to sustain the District Court's decision. In the Matter of A.J.S. (1981), _____ Mont. _____, 630 P.2d 217, 38 St.Rep. 947; In the Matter of M.R.L. (1980), _____ Mont. _____, 608 P.2d 134, 37 St.Rep. 542; In the Matter of J.L.B. (1979), _____ Mont. _____, 594 P.2d 1127, 36 St.Rep. 896. We affirm.

At the time the District Court made its dispositional order in this matter, appellant and her children had been involved with SRS for over three years. This was in fact the second time SRS had sought temporary investigative authority and protective services for appellant's children. In March 1978 SRS received a telephone call from the Bozeman Help Center reporting that appellant was disoriented and unable to care for her children. With the aid of SRS, appellant was hospitalized briefly for psychiatric treatment, and under temporary court order the children were placed in foster care for four months. When custody was returned to appellant in July 1978, SRS was ordered to continue monitoring the status of the home environment and was to provide psychiatric care for appellant and daycare for KA.

The second petition for temporary investigative authority filed in October 1980 was precipitated by culmination of events that led SRS to conclude that its intervention was less than successful. SRS received reports that KV was habitually tardy at school and that KA only intermittently attended daycare. When KV attended school, she was reported to be inadequately dressed, dirty and socially immature; the Children's Development Center forwarded similar reports regarding KA, noting particularly that KA ofttimes sat in the corner by himself, rocking back and forth with a blank look on his face. SRS also learned that appellant's eviction from her apartment was imminent because she was late in paying her rent, the apartment was maintained in a filthy condition, and she had permitted the children to throw broken furniture out the apartment

windows.

Although appellant now attempts to contest the District Court's July 1, 1981, conclusion that KA was a neglected child within the meaning of section 41-3-102(2), MCA, it is of some note that appellant did not resist the petition for temporary investigative authority which initially resulted in a November 14, 1980, declaration that KA was a youth in need of care. As section 41-3-102(10), MCA, defines "youth in need of care," the term includes youths who are dependent, abused or neglected. If appellant seriously believed that her acts or omissions had not or would not harm KA's physical or mental health or welfare, she should have immediately defended against SRS's October 1980 petition.

Additionally this Court notes that the allegations contained in the February 1981 petition seeking permanent custody are for the most part identical to the allegations contained in the October 1980 petition, with the additional allegation that appellant had since failed to cooperate with SRS in establishing required parental skills programs. The testimony received during the June 1981 dispositional hearing simply substantiated each allegation with clear and convincing evidence that KA was indeed neglected and that prospects for remedying such neglect by maintaining appellant's parental rights were dismal. A brief summary of the testimony elicited during the June hearing will suffice to show that the State met its burden and that the District Court acted within its proper scope of discretion in terminating appellant's rights.

Gala Goodwin, a social worker involved with appellant

-4-

and her children since July 1978, testified that in her regular visits with the family over the last three years she observed persistently deplorable conditions in several of appellant's residences. She presented the court with photographs of appellant's most recent former residence. The photographs were taken shortly before appellant was evicted from the apartment and temporary investigative authority was granted. The pictures showed garbage and dirt accumulation throughout the apartment, filthy bath and kitchen fixtures and appliances, a broken window, and inadequate sleeping facilities for the children. Ms. Goodwin further testified that appellant had been evicted from at least three rental units since July 1978 because of the filthy condition of her home.

Sherry Bersanti, neighbor of appellant from June through October 1980, also testified as to the squalid condition of appellant's home. Ms. Bersanti stated that the apartment was filthy, strewn with cat feces and garbage, and smelled terrible. Ms. Bersanti said she spent two days helping appellant clean her apartment but that one month later, after appellant had been evicted and Ms. Bersanti returned to the apartment, she said she could not believe it had been cleaned earlier.

Testimony regarding KA's physical and emotional condition while in appellant's custody was also provided by Ms. Goodwin and Ms. Bersanti. Ms. Goodwin stated KA was very withdrawn and would either rock back and forth with his arms about him or shake uncontrollably. She said he never spoke during any of her visits with appellant and that he was lethargic and very dirty. Ms. Bersanti said that KA was

always dirty, clad in the same set of clothes and barefoot, and that he often told her he was hungry and she would then give him something to eat.

Ms. Goodwin further testified as to the change in KA's condition after he was placed in foster care. She said KA "is now bright and alert and chatters all the time. He's clean, he's very intelligent, he is very active, he runs, laughs, he is involved in school, he is involved with his friends, he is a very normal type boy."

The psychologist who evaluated appellant in February 1981 diagnosed her as paranoid schizophrenic, "suffering from a severe emotional disturbance, that was manifested by strong agitation, serious ambivalence concerning her roles as a mother, and a person." He stated she required active outpatient therapy and that it was his professional opinion appellant lacked the ongoing capacity to provide long-term care for KA. He said his prognosis for returning KA to appellant in the future was poor and that KA would likely start manifesting autistic behavior again if appellant regained custody of her child.

Appellant believes that it was improper for the District Court to base its termination decision on events which occurred before KA was adjudicated to be a youth in need of care. Appellant would require a showing by the State that the circumstances and conditions which predated the adjudication continued to exist at the time of termination. While such a showing might be appropriate if SRS had only recently begun to work with the family, in a situation where the parent has been assisted and monitored by SRS over a period of years and the family environment has not yet

-6-

stabilized and perhaps even deteriorated, to require more would beg for experimentation at the expense of the child's best interests. See, e.g. In the Matter of M.R.L., supra. Most certainly that is not what the law demanded in June 1981.

Even under the new law which now prescribes the criteria that must be met before parental rights can be terminated (see section 41-3-601 et seq., MCA), there is no such circumscription of the evidence that the District Court may properly consider. In fact the evidence adduced here substantially conforms to that which is required under section 41-3-609(c), MCA, viz., (1) SRS' previous intervention and treatment program spanning three-plus years has not been successful and (2) appellant's current mental condition is such that it is unlikely she will be able to care for KA's needs within a reasonable period of time. This Court will require no more of the State nor the District Court than to assure that the evidence supporting the District Court's decision is clear and convincing.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-