No. 97-511

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 281

296 Mont. 535

989 P.2d 860

IN RE THE MATTER OF

E.A.T. and T.A.T.,

Youths in Need of Care.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brock Albin, Albin Law Firm; Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

Marty Lambert, Gallatin County Attorney; Gary Balaz,

Deputy County Attorney; Bozeman, Montana

---

Submitted on Briefs: June 17, 1999

Decided: November 23, 1999

Filed:

---

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ The Department of Public Health and Human Services (DPHHS) brought this action in the District Court for the Eighteenth Judicial District in Gallatin County to terminate the parental rights of Lee (the father) and Nicki (the mother). The District Court terminated the parental rights of Lee and Nicki and awarded permanent custody of E.A.T., with the right to consent to his adoption, to DPHHS. Nicki appeals from the judgment of the District Court terminating her parental rights. Both Lee and Nicki appeal from the judgment of the District Court awarding custody of E. A.T. to DPHHS. We affirm the judgment of the District Court.

2. ¶ The following issues are presented on appeal:

3. ¶ 1. Did the District Court abuse its discretion by terminating the parental rights of Nicki?

4. ¶ 2. Did the District Court abuse its discretion by terminating parental rights without considering other options, such as a guardianship?

5. ¶ 3. Did the District Court abuse its discretion by permanently placing E.A.T. with the DPHHS and not with E.A.T.'s grandmother Eva, following termination of Lee's and Nicki's parental rights?

# FACTUAL BACKGROUND

6. ¶ Appellants Nicki and Lee are the parents of two sons, E.A.T., born June 8, 1994, and T.A.T., born February 28, 1997. E.A.T. is the subject of this appeal.

7. ¶ On September 21, 1995, DPHHS received a referral regarding a September 20, 1995 emergency room visit during which the emergency room doctor discovered fresh tears and bruising around 15-month-old E.A.T's rectal area. On September 29, 1995, after conducting interviews with E.A.T.'s parents Nicki and Lee, DPHHS removed E.A.T. from their home and placed him in protective custody with a foster parent.

8. ¶ On October 2, 1995, DPHHS filed a petition for temporary investigative authority based on allegations that E.A.T. had been sexually abused. At the October 12, 1995 hearing to consider DPHHS's petition for temporary investigative authority, the Appellants consented to a six-month temporary investigative authority for DPHHS. Additionally, the court ordered the parties to draft a treatment plan. The parties filed the court ordered treatment plan on October 24, 1995.

9. ¶ On April 12, 1996, after E.A.T. had spent more than six months in foster care, DPHHS filed a petition for temporary custody of E.A.T., alleging that the Appellants had not complied with their court ordered treatment plans. On May 20, 1996, the court held a hearing to consider the petition for temporary custody and after which it ordered that E.A.T. be returned to Nicki, and ordered that Lee be excluded from the home. Lee was only permitted supervised visitation with E.A.T. Nicki was required to continue with her treatment plan and Lee was ordered to complete a sex offender evaluation, following which the court intended to reconsider the case. Additionally, the court granted DPHHS the authority to enter Nicki's home to monitor E.A.T. and to place E.A.T. in protective custody should an emergency arise.

10. ¶ On June 7, 1996, after E.A.T. had been in Nicki's care for approximately two weeks, DPHHS social workers discovered Lee's car in a parking lot in the vicinity of Nicki's home. Accompanied by a Gallatin County Sheriff's Deputy, the DPHHS social workers went to Nicki's home. The Deputy asked Nicki if Lee was in the home and she denied his presence. However, upon searching Nicki's home, Lee was discovered hiding in the bedroom closet. Nicki later testified that she knew of Lee's presence in her home and that she had asked him to stay with her that night, in direct violation of the court's order.

11. ¶ Because of Nicki's violation of the court's order to exclude Lee from their home and not allow any unsupervised contact with E.A.T., DPHHS removed E.A.T. from

the home that night and returned him to the protective custody of the foster parents. The next morning, on June 8, 1996, DPHHS brought E.A.T. to a pediatrician, Dr. McInnis, for examination. It was Dr. McInnis' opinion that there had possibly been recent sexual abuse. E.A.T. was referred to Dr. Johnson, a pediatrician with special training in the area of child sexual abuse. Dr. Johnson examined E.A.T. on June 12, 1996. Dr Johnson's opinion was that E.A.T.'s physical condition was consistent with recent sexual abuse.

12. ¶ On August 21, 1996, DPHHS filed a petition to terminate Lee's and Nicki's parental rights to E.A.T. On August 30, 1996, Eva, E.A.T.'s maternal grandmother, petitioned and was granted leave to be added as a party to this matter. A hearing was held to consider DPHHS's petition to terminate parental rights on September 18 through 20, 1996.

13. ¶ On June 27, 1997, the District Court entered its Findings of Fact, Conclusions of Law and Order terminating both Lee's and Nicki's parental rights to E.A.T. Specifically, the court found that: (1) E.A.T. had been sexually abused by Lee; (2) E.A.T. would not be safe in Nicki's care because she is unable or unwilling to protect E.A.T. from Lee; (3) the conduct and condition of both Lee and Nicki, renders them unfit to be parents and is unlikely to change within a reasonable time; and (4) Nicki's questionable adherence to her treatment plan suggests that she is not serious about parenting E.A.T.

14. ¶ On August 21, 1997, the District Court entered its Supplementary Order granting DPHHS permanent legal custody of E.A.T., with the right to consent to his adoption.

## STANDARD OF REVIEW

15. ¶ The standard of review for a district court's findings of fact in a parental rights termination case is whether the findings are clearly erroneous. *In re the Matter of J. M.W.E.H.,* 1998 MT 18, ¶ 27, 287 Mont. 239, ¶ 27, 954 P.2d 26, ¶ 27. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that the District Court made a mistake. *In re J.M.W.E.H*, ¶ 27. We review conclusions of law in a termination proceeding to determine if those conclusions are correct. *In re E.W., C.W. and A.W.,* 1998 MT 135, ¶ 11, 289 Mont. 190, ¶ 11, 959 P.2d 951, ¶ 11.

16. ¶ This court has recognized that a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures. *In re E.W., C.W. and A.W.,* ¶ 12. Moreover, the party seeking

termination must present clear and convincing evidence to the district court that the prerequisite statutory criteria for termination have been met. *In re E.W., C.W. and A. W.,* ¶ 12.

17. ¶ In the context of parental rights termination cases, we have defined clear and convincing evidence as:

[S]imply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of the proof. This requirement does not call for unanswerable or conclusive evidence.

*In re E.W., C.W. and A.W.,* ¶ 13.

## ISSUE 1

18. ¶ Did the District Court abuse its discretion by terminating Nicki's parental rights to E.A.T.?

19. ¶ Nicki makes several arguments to support her contention that the District Court abused its discretion by terminating her parental rights to E.A.T. She argues that there was no clear and convincing evidence that sexual abuse occurred. Based solely upon her contention that the District Court erred in finding that sexual abuse had occurred, Nicki also makes the following arguments: (1) the court erred when it found that she could not protect E.A.T.; (2) the court erred when it found that the condition that caused her to be unfit was unlikely to change; and (3) the court erred when it found that she failed to comply with her treatment plan.

20. ¶ First, Nicki argues that the District Court abused its discretion by terminating her rights absent clear and convincing evidence that sexual abuse of E.A.T. occurred. Nicki contends that the court misapprehended the effect of the testimony of Dr. Johnson. She argues that "Dr. Johnson simply was highly suspicious of sexual abuse. If the court concluded that sexual abuse occurred, it has done so erroneously." Nicki's theory is that E.A.T. received the two reported injuries to his rectal area, not as a result of sexual abuse, but because he was constipated. She testified that ever since E.A.T. was little, he has suffered from constipation. However, she offered no medical proof or evidence to support this assertion.

21. ¶ Dr. Johnson, a pediatrician specially trained in child sexual abuse, testified to the following:

[T]he extent of the fissures that we saw. . . are almost always caused by some force extending from the outside. And so we think of sodomy. . . . These fissures, although they were in the positions that constipated stools can cause, were well beyond those that we see with constipation . . . .

Q. And how probable is it that actual constipation could cause fissures of that type?

A. Well, it's not probable. It's not impossible.

¶ In its conclusions of law, the District Court stated that "[t]he court accepts the testimony of Dr. Johnson as to the extent of the sexual injury to E.[A.]T.", and "[t]he court finds that E.[A.]T. has been sexually abused by Lee T."

¶ Nicki additionally argues that the District Court misapprehended the effect of the other evidence regarding sexual abuse. She testified that she was not convinced that Lee sexually abused E.A.T. and Lee testified that he did not sexually abuse E.A.T. She asserts that "[t]he strength of the case that sexual abuse occurred is the following: E.A.T. had tears on his anus on two occasions after being near Lee. The foster parents saw no evidence of constipation or bleeding while they had E.A.T. in their care."

¶ However, as DPHHS points out, in addition to these facts, the record reflects that the District Court found Dr. Johnson's testimony, that she was highly suspicious of sexual abuse, compelling. Additionally, Dr. Johnson found the ease with which E.A.T. submitted to an examination of his rectal area most unusual. She testified that it indicated that he had been placed in such a position many times.

¶ In the context of parental rights termination cases, we have defined the term "clear and convincing evidence" as that quality of proof "more than a preponderance but not beyond a reasonable doubt." *In re J.M.W.E.H,* ¶ 33. We have held that clear and convincing evidence "does not call for unanswerable or conclusive evidence." *In re J.M.W.E.H,* ¶ 33.

¶ Applying these rules to the instant case, the fact that Dr. Johnson testified that she was "highly suspicious," and not definite, does not preclude the court from relying on her testimony. That "suspicion" in combination with other testimony given by Dr. Johnson regarding the physical evidence was sufficient to satisfy the State's burden of proof. It is not the role of this Court to substitute our evaluation of the evidence for that of the trial court, or pass upon the credibility of witnesses. *In re J.M.W.E.H.,* ¶ 34.

¶ Having extensively reviewed the record, we conclude that the District Court's

findings regarding the sexual abuse of E.A.T. by Lee are supported by clear and convincing evidence and are not clearly erroneous.

28. ¶ Because we conclude that there was clear and convincing evidence that Lee sexually abused E.A.T., Nicki's remaining three arguments regarding the termination of her parental rights which are predicated on her primary argument also fail. We conclude that the District Court did not abuse its discretion by terminating Nicki's parental rights to E.A.T.

## ISSUE 2

29. ¶ Did the District Court abuse its discretion by terminating Nicki's parental rights to E.A.T. without considering other options, such as a guardianship?

30. ¶ Nicki contends that the District Court abused its discretion by terminating her parental rights without considering other options. Nicki asserts that a guardianship should have been considered prior to the court's termination of her parental rights.

31. ¶ While it is true that the State of Montana's policy regarding child abuse and neglect is to preserve and protect family unity, it is also this state's policy to provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for their care and protection. Section 41-3-101, MCA.

32. ¶ This Court has recognized that family integrity is a constitutionally protected interest. *Matter of M.R.L.,* (1980) 186 Mont. 468, 472, 608 P.2d 134, 137. We have also noted, however, that family unity need not be preserved at the expense of the child's best interest. *Matter of M.R.L.,* 186 Mont. at 472, 608 P.2d at 137. Further, we have declared that:

[T]he right to maintain the family unit is not absolute and although the children's best interests and welfare generally are served by maintaining the family unit with custody retained by the natural parents, *the children's best interest and welfare, not that of the natural parent, is the paramount consideration*.

*Matter of C.G.* (1988), 230 Mont. 117, 120, 747 P.2d 1369, 1371 (emphasis added).

33. ¶ Additionally, the specific criteria for which a court may order termination of the parent-child legal relationship are enumerated in § 41-3-609(1), MCA. No limitation is placed upon a court which requires consideration of other options, such as a guardianship, prior to terminating parental rights. *See* § 41-3-609(1), MCA. The role

of courts in applying a statute has always been "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1_2_101, MCA. Statutory language must be construed according to its plain meaning and if the language is clear and unambiguous, no further interpretation is required. *See Lovell v. State Comp. Mut. Ins. Fund* (1993), 260 Mont. 279, 285, 860 P.2d 95, 99.

34. ¶ In its Supplementary Order, dated August 21, 1997, the District Court granted DPHHS permanent legal custody of E.A.T., with the right to consent to his adoption. We conclude that the District Court did not abuse its discretion by doing so. We further conclude that the court was not required to consider a guardianship prior to terminating Nicki's and Lee's parental rights.

## ISSUE 3

35. ¶ Did the District Court abuse its discretion by permanently placing E.A.T. with DPHHS, and not E.A.T.'s maternal grandmother Eva, following termination of Lee's and Nicki's parental rights?

36. ¶ Nicki and Lee argue that the court should have given preference to E.A.T.'s extended family, specifically, E.A.T.'s maternal grandmother Eva, when ordering the permanent placement of E.A.T. after terminating Nicki's and Lee's parental rights. Both Appellants cite § 41-3-101(4), MCA, as authority for their contention that the court is required to give preference to extended family for out-of-home placement of children. Section 41-3-101(4), MCA, provides:

In implementing the policy of this section, whenever it is necessary to remove a child from the child's home, *the department shall, when it is in the best interests of the child and when the home is approved by the department*, place the child with the child's extended family, including adult siblings, grandparents, great-grandparents, aunts, and uncles, prior to placing the child in an alternative protective or residential facility.

(Emphasis added.) This statutory language is clearly directed at the department (DPHHS), and not the court.

37. ¶ Section 41-3-607, MCA, provides that:

If termination of a parent_child legal relationship is ordered, the court may transfer

permanent legal custody of the child, with the right to consent to the child's adoption, to:

(a) the department;

(b) a licensed child_placing agency; or

(c) another individual who has been approved by the department and has received consent for the transfer of custody from the department or agency that has custody of the child.

38. ¶ This Court has often held that a district court has discretionary authority to transfer legal custody to any qualified individual, including a nonrelative, in order to protect the welfare of the youth. *Matter of J.J.G.* (1994), 266 Mont. 274, 286, 880 P.2d 808, 815; *Matter of S.P.* (1990), 241 Mont. 190, 201, 786 P.2d 642, 648. Moreover, we have held that a grandmother does not, by virtue of her status as a grandparent, have any superior right of adoption or custody to that of a nonrelative. *Matter of S.P.* (1990), 241Mont. at 201, 786 P.2d 648.

39. ¶ The District Court's record reflects its consideration of Eva as a possible guardian or permanent caretaker in this matter. The court allowed Eva to become a party to this matter and present her case at the hearing on the petition to terminate parental rights. The court stated as follows in its findings of fact:

[Eva] believes she can adequately care for E.[A.]T., and protect him. She said she would provide supervised visitation for Nicki and that she would not allow Nicki to remove E.[A.]T. from her home.

40. ¶ Additionally, the court made the following finding of fact in regards to the testimony of E.A.T.'s guardian ad litem:

Mrs. Nybo [E.A.T.'s guardian ad litem] also recommended against E.[A.]T. being placed with Mrs. T. She bases this recommendation on her discussions with Nicki about Nicki's childhood neglect, and prior DPHHS involvement with Mrs. T.'s parenting of Nicki. She states that Mrs. T. lied to her about there being any prior DPHHS involvement, and also lied to her about the number of visitations she had with E.[A.]T. She was concerned that E.[A.]T. had received bite marks while Mrs. T. was babysitting him and another grandchild. However, she did not interview Mrs.

T. concerning this event.

41. ¶ The District Court's findings reflect its consideration of E.A.T.'s maternal grandmother as a possible custodian in this matter. However, the District Court entered its order directing that the permanent custody of E.A.T. be placed with DPHHS and granting DPHHS the right to consent to E.A.T.'s adoption. We conclude that there was sufficient credible evidence in the record to support the District Court's judgment not to grant Eva permanent custody of E.A.T. We further conclude that the District Court did not abuse its discretion when it awarded permanent custody of E.A.T., with right to consent to his adoption, to DPHHS.

42. ¶ While conceding that she has no standing to assert a constitutional violation on Eva's behalf (Eva did not appeal the District Court's decision granting permanent custody to DPHHS), Nicki additionally contends the District Court's refusal to grant Eva permanent custody of E.A.T. was "a violation of her liberty interests in E.A.T.'s society" and a violation of E.A.T.'s "due process, statutory, and substantive due process rights to his mother's society."

43. ¶ Because we have upheld the District Court's termination of Nicki's parental rights, § 41-3-611, MCA, governs:

(1) An order for the termination of the parent-child legal relationship divests the child and the parents of all legal rights, powers, immunities, duties, and obligations with respect to each other as provided in Title 40, chapter 6, part 2, and Title 41, chapter 3, part 2, except the right of the child to inherit from the parent.

. . . .

(3) After the termination of a parent-child legal relationship, the former parent is neither entitled to any notice of proceedings for the adoption of the child nor has any right to object to the adoption or to participate in any other placement proceedings held pursuant to 41-3-610.

Based upon this statutory language, we conclude that Nicki does not have standing to object to the court's placement of E.A.T. with DPHHS, nor any subsequent adoptive placement of E.A.T. Additionally, based upon this same statutory language, as well as § 41-3-303(2), MCA, which describes the role of the guardian ad litem as: "charged with the representation of the child's best interests," we conclude that Nicki does not have standing to assert a violation of E.A.T.'s rights.

44. ¶ Accordingly, the District Court's decision to terminate Nicki's parental rights to E. A.T., and the District Court's decision to award DPHHS permanent legal custody of E.A.T. with the right to consent to his adoption, are affirmed.

/S/ TERRY N. TRIEWEILER


We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART