DA 12-0651

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 26N

IN THE MATTER OF:

S. S.-G.,

    A. Youth in Need of Care

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN 10-44
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Lucy Hansen, Attorney at Law; Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General; Helena, Montana

    Fred R. Van Valkenburg, Missoula County Attorney, Diane Conner, Deputy
County Attorney; Missoula, Montana

Submitted on Briefs:  January 8, 2014
Decided:  January 29, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A.G. is the biological father of S.S.-G. On November 10, 2011, A.G. pled guilty to attempted mitigated deliberate homicide and failing to stop immediately at a scene where someone was killed or seriously injured. A.G. was sentenced for a term of 40 years for attempted mitigated deliberate homicide, and a concurrent term of 10 years for the failure to stop.

¶3 The Department of Public Health and Human Services (Department) filed a petition to terminate A.G.'s parental rights on March 19, 2012. S.S.-G.'s birth mother and paternal grandmother wanted the Department to take S.S.-G. into permanent legal custody so that the paternal grandparents could then adopt through the Department. At the hearing to terminate A.G.'s parental rights, the Department's social worker testified that the Department would place S.S.-G. with her paternal grandparents, and that the adoption would be completed quickly. A.G. supported the adoption, but out of apparent distrust for the State, did not want the Department to control the adoption. A.G.'s appeal contests the termination of his rights, arguing that S.S.-G.'s adoption ought to be conducted through private adoption proceedings.

¶4 We review a termination of parental rights for abuse of discretion. *In re D.S.B.*, 2013 MT 112, ¶ 8, 370 Mont. 37, 300 P.3d 702 (citing *In re A.N.*, 2005 MT 19, ¶ 17, 325 Mont.

2

379, 106 P.3d 556). We presume that a district court's decision is correct and we will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence. *In re E.K*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690.

¶5 A court may terminate parental rights upon a finding that the child has previously been adjudicated a youth in need of care, that the parent has not complied with a court-approved treatment plan, and that the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. A treatment plan is not required if the parent will be incarcerated for more than one year and if "reunification is not in the best interests of the child based on the child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs." Section 41-3-609(4)(c), MCA. In evaluating whether the conduct or condition of a parent is unlikely to change, the court must give primary consideration to the physical, mental and emotional needs of the child. Section 41-3-609(3), MCA. If a child has been in foster care under the physical custody of the State for 15 of the most recent 22 months, the best interests of the child are presumed to be served by a termination of parental rights. Section 41-3-604(1), MCA.

¶6 The District Court did not abuse its discretion by terminating A.G.'s parental rights under § 41-3-609(1)(f), MCA. S.S.-G. has previously been adjudicated a youth in need of care, implicating that statute. Because A.G. will be incarcerated for more than one year, no treatment plan is required, as long as reunification is not in S.S.-G.'s best interests. The District Court found that S.S.-G.'s best interests were served by termination of parental rights because A.G. faced extended incarceration for a violent felony, the child was very

3

young and needed immediate permanency, and the child had been in State custody for 21 months of her 22 month life. A.G. also failed to complete a treatment plan tailored to account for his incarceration, further demonstrating that reunification was unlikely. Substantial evidence supported the court's finding that the child's best interests required immediate termination of the parent-child relationship.

¶7 As to the final element of § 41-3-609(1)(f), MCA, the court found that A.G.'s condition was unlikely to change. The court made that finding based on the length of his incarceration and his failure to complete the amended treatment plan. The court also noted that S.S.-G.'s needs deserve primary consideration in evaluating whether A.G.'s conduct or condition is unlikely to change, citing to § 41-3-609(3), MCA. The court was clearly within its discretion in finding that A.G.'s condition was unlikely to change.

¶8 A.G. contends that the District Court did not consider whether private adoption proceedings, rather than the Department's proceedings, would be in S.S.-G.'s best interests. "No limitation is placed upon a court which requires consideration of other options, such as a guardianship, prior to terminating parental rights." *In re E.A.T.*, 1999 MT 281, ¶ 33, 296 Mont. 535, 989 P.2d 860. The court nonetheless considered ample evidence that the Department was a better option than A.G.'s alternative. The court considered testimony that S.S.-G. and her grandparents were eligible for an adoption subsidy through the Department. That subsidy would allow S.S.-G.'s grandparents to address any of her special needs or disabilities, which could arise from her exposure in utero to dangerous drugs. The subsidy aside, the court was also concerned that S.S.-G. would continue to wait in a "holding

4

pattern" while her father obtained long-term custody and guardianship, followed by his voluntary relinquishment of rights and a private adoption.

¶9 The court also considered testimony that Florida, where S.S.-G.'s grandparents live, could not begin adoption proceedings until A.G.'s parental rights were terminated. The Department, on the other hand, was required to maintain its petition for termination until Florida approved an adoptive home. Even if that bureaucratic complication was sorted out, A.G. provided no timeline or plan for voluntarily relinquishing his rights or arranging for private adoption. In sum, A.G.'s proposed alternative provided no end in sight for S.S.-G.'s holding pattern, while the Department presented an immediate solution. The child's need for a stable home is not subordinate to the timelines of her parents. *In re D.A. and M.A.*, 2008 MT 247, ¶ 26, 344 Mont. 513, 189 P.3d 631. S.S.-G. should not be allowed to drift indefinitely in legal limbo while A.G. attempts to craft an alternative adoption procedure. The District Court acted within its discretion in determining that S.S.-G.'s best interests were served through immediate termination of parental rights.

¶10 For the foregoing reasons, we affirm. The District Court's decision was supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted. We have therefore determined to decide this case pursuant to Section I, Paragraph 3(d), of our Internal Operating Rules, which provides for noncitable memorandum opinions.

/S/ MICHAEL E WHEAT

We Concur:

5

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE