DA 22-0736

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 169N

IN THE MATTER OF:

L.E.A.B. and E.M.G.,

Youths in Need of Care.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DN-16-88A and DN-16-86A
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Shannon Hathaway, Hathaway Law Group, Missoula, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

Travis Ahner, Flathead County Attorney, Katherine Handley, Deputy County Attorney, Kalispell, Montana

Submitted on Briefs: August 2, 2023

Decided: September 5, 2023

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Mother appeals from an Eleventh Judicial District Court order granting the Department of Public Health and Human Services' (Department) petition for termination of parental rights (TPR) of her children, L.E.A.B. and E.M.G. We affirm.

¶3    Mother's children have been removed five times from her care since 2016 due to Mother's mental instability and inability to care for her children during such periods. In this most recent case, L.E.A.B. and E.M.G. were removed from Mother's care on December 17, 2020. The District Court adjudicated the children as youths in need of care and granted temporary legal custody to the Department on January 5, 2021. The children were returned for a trial home visit around June 18, 2021. However, Mother began to decompensate, and the children were re-removed on December 19, 2021.

¶4    After two status hearings in which Mother was unable to attend due to hospitalizations, Mother participated in a February 4, 2022 status hearing, where the Department confirmed it would be seeking TPR. On April 21, 2022, the Department filed a petition for termination of parental rights. The District Court held a termination hearing July 18-19, 2022. The court entered an order terminating Mother's parental rights under

§ 41-3-609(1)(f), MCA, and transferred permanent legal custody of the children to the Department with the right to petition for appointment of a guardian, which was later amended to allow the Department to consent to adoption pending this appeal.

¶5 We review a district court's decision to terminate parental rights for abuse of discretion, which considers "'whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice.'" *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691 (quoting *In re K.J.B.*, 2007 MT 216, ¶ 22, 339 Mont. 28, 168 P.3d 629). We review the district court's findings of fact for clear error. *In re S.S.*, 2022 MT 75, ¶ 12, 408 Mont. 238, 507 P.3d 1161. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court is left with the definite and firm conviction that a mistake has been committed." *In re S.S.*, ¶ 12.

¶6 On appeal, Mother offers two arguments: (1) the Department's failure to assign a courtesy worker upon her move to Missoula amounted to a lack of "reasonable efforts," and (2) the District Court abused its discretion by finding both that TPR and a guardianship were in the children's best interests.

¶7 In its order, the District Court found that "the treatment plan has been unsuccessful despite extensive interventions." The court found that the Department had used reasonable efforts with a non-exclusive list of 45 efforts the Department made in trying to prevent the children's removal and to facilitate reunification since 2016—many of which were

completed multiple times. The court also found that Mother's conduct was unlikely to change within a reasonable time.

¶8 "When determining whether the department has made reasonable efforts to prevent the necessity of removal of a child from the child's home or to reunify families that have been separated by the state, the court shall review the services provided by the agency . . . ." Section 41-3-423(7), MCA. It is highly fact dependent. *In re R.L.*, 2019 MT 267, ¶ 18, 397 Mont. 507, 452 P.3d 890.

¶9 When a parent moves away from the county where the child is placed and needs assistance with their treatment plan components, the Department's policy provides for a courtesy worker where the parent resides. *See Courtesy Supervision of Out of Home Placement*, Mont. Dep't of Pub. Health and Hum. Services, https://perma.cc/7NTR-LETG (last updated Feb. 11, 2023); *see also In re R.J.F.*, 2019 MT 113, 395 Mont. 454, 443 P.3d 387 (reversing TPR because, among other things, the Department had failed to provide a courtesy worker when Mother lived out of state and had no access to resources required under her treatment plan).

¶10 Here, *In re R.J.F.* can be distinguished. The lack of a courtesy worker in Missoula, even if erroneous, was one failure opposite a very long list of services the Department had provided Mother since 2016. This single instance of alleged policy failure in a long line of other efforts cannot be a basis to conclude that the District Court erred in determining that the Department used reasonable efforts to reunite Mother with her children. The Department must, in good faith, develop, implement, and assist a parent with a treatment

4

plan designed to preserve the family unit, but need not make herculean efforts. *In re R.L.*, ¶¶ 19–20.

¶11 Indeed, the record shows that despite being in a neighboring county, the child protection specialist assigned to the case, Corina Howard (Howard), made sure that Mother had the support she needed to continue with her treatment plan when the children were returned home for a trial visit. The District Court considered Howard's efforts to create an in-home safety plan; stay in contact and remain updated on Mother and children's health-care progress; enroll the children in local summer camps, daycare, and programs; offer gas vouchers to transport the children to appointments and activities; and to stay in weekly contact with Mother.[1]

¶12 Further, although "determination of whether the Department made reasonable efforts is not a separate requirement for termination, it may be a predicate for finding that the conduct or condition rendering a parent unfit, unwilling, or unable to parent is unlikely to change within a reasonable time . . . ." *In re R.L.*, ¶ 18.

¶13 The record clearly shows that Mother was doing much better at the time—even without a local courtesy worker. However, the District Court made clear that:

> [TPR] is not being sought because of the current circumstances, but because of the *pattern* of abuse and neglect these children have been through over the past six years. [Mother] has shown time and again that when the Department is involved in her life, she is capable of taking psychiatric medications and stabilizing—and weeks to months after the Department is out of her life, she goes off her medications, decompensates, and puts her children through continuing and escalating trauma. Without long-term medication

---

[1] The hearing transcript indicates that had it not been for Mother's decompensation and the Department's subsequent petition for TPR, the case would have been transferred to Missoula for the ease of all parties.

compliance, [Mother] is unable to parent her children safely, and over the course of six years, she has *consistently* gone off her medications shortly after Department oversight has ended. This cycle of abuse and stabilization can no longer continue for these two children.

(Emphasis added.)

¶14 We cannot now conclude that the lack of a courtesy worker in Missoula, with all the other efforts the Department made since 2016, amounted to a lack of reasonable efforts such that the District Court's finding that Mother was unable to change in a reasonable time was clearly erroneous. The District Court did not abuse its discretion in revoking Mother's parental rights.

¶15 Mother next challenges the District Court's order, which both concluded that terminating her parental rights was in the children's best interests and concluded that the children's best interests would be served by a guardianship with their great aunt (if the Department consented) that would allow them to maintain a relationship with their mother "*if* she is in a place to be around them safely." (Emphasis added.)

¶16 Three options were considered by the District Court in the hearing: (1) not terminating parental rights, but considering a guardianship of the children under § 41-3-442(4)(e), MCA; (2) terminating parental rights with the right to consent to the children's adoption under §§ 41-3-442(4)(c)(i) and -607(2)(a), MCA; or (3) terminating parental rights with the right to consent to a guardianship under §§ 41-3-442(4)(c)(iii) and -607(2)(b), MCA.

¶17 When determining whether to terminate a parent's rights, "'the best interests of the children are of paramount concern . . . and take precedence over the parental rights.'"

6

*In re K.L.*, 2014 MT 28, ¶ 15, 373 Mont. 421, 318 P.3d 691 (quoting *In re E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690). Upon termination, the court may, among other options, grant the right to the Department to consent to the child's adoption or guardianship. Section 41-3-607(2), MCA. Similar to termination, when deciding whether to appoint a guardian for a child, the court must look to the child's best interests. *See* §§ 41-3-444(2)(g), -607(2)(b), MCA.

¶18 The Department sought termination of parental rights with the right to consent to adoption. However, at the hearing, the Department noted that there were two options being contemplated as permanent placement for the kids: guardianship with their great aunt or adoption with a foster family that already had an ongoing relationship with the children—but in no case was the Department seeking a guardianship without termination.

¶19 The District Court concluded that it was in the children's best interest, to the extent possible, to have regular continuing contact with the mother *while and when she is healthy*, finding:

> The children's best interests will be served by terminating birth mother's parental rights and by granting permanent legal custody to the Department with the right to consent to guardianship with Aunt . . ., who is committed to both the children, and to maintaining a relationship between the children and birth mother *if she is in a place to be around them safely*.

(Emphasis added.) At that point in time, the court believed that the children's great aunt was able to commit to be a permanent guardian for the children.

¶20 However, after a few months, the great aunt expressed doubts about being a permanent placement for the kids, and she suggested that the foster parents might be a

better permanent fit. The Department then filed a permanency plan that recommended adoption by the foster parents, which the District Court approved. *See* § 41-3-445, MCA.

¶21 Mother challenges the District Court findings that termination, along with a guardianship so that Mother could continue a relationship with the children while she was healthy, was in the best interests of the children. Even if this issue was not moot due to the subsequent permanency plan, there was no clear error in the District Court's findings of fact.

¶22 It is reasonable, based on the record, to conclude that terminating Mother's parental rights was in the children's best interests due to Mother's invariable pattern of stability followed by decompensation and harm to the children shortly after the Department dropped their cases. It was also reasonable to conclude that the children having a relationship with Mother while she was healthy was in their best interests. The decision to terminate parental rights was distinct from the decisions on permanent placement, and the District Court did not abuse its discretion in finding that TPR was in the children's best interests. *See In re E.A.T.*, 1999 MT 281, ¶ 33, 296 Mont. 535, 989 P.2d 860 ("No limitation is placed upon a court which requires consideration of other options, such as a guardianship, prior to terminating parental rights.").

¶23 Finally, it was not an abuse of discretion to terminate Mother's parental rights despite testimony from Mother that, unlike with prior removals, she now recognized the stability issues, had medications that worked for her, and was committed to taking her medications. The District Court had six years' experience working with and hearing from Mother in four different cases. "In non-jury trials, witness credibility and the weight to be

8

given to witness testimony is squarely within the province of the district court." *In re C.M.*, 2019 MT 227, ¶ 21, 397 Mont. 275, 449 P.3d 806. The finding that Mother was unlikely to change within a reasonable time was not clearly erroneous.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶25 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE