DA 13-0177

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 274

IN THE MATTER OF:

T.S., T.S., T.S., T.S.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. ADN 11-155, -156, -157, -158
Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Anne-Marie K. Simeon, Attorney at Law, Billings, Montana

     For Appellee:

     Timothy C. Fox, Montana Attorney General; Tammy K Plubell, Assistant
Attorney General; Helena, Montana

     Theresa L. Diekhans, Child Protection Unit, Great Falls, Montana

     John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  September 4, 2013
Decided:  September 24, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    K.S., the Father, appeals from the Order of the Montana Eighth Judicial District Court, Cascade County, terminating his parental rights.  We affirm.

## ISSUES

¶2    The issues presented for our review are as follows:

¶3    *Did the Father preserve for review the issue of his treatment plan's appropriateness, when he did not timely object to the plan?*

¶4    *Did the District Court abuse its discretion by terminating the Father's parental rights without also terminating the Mother's parental rights?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    The order at issue terminates the Father's parental rights to his four children, T.S.1, T.S.2, T.S.3, and T.S.4 (Children).

¶6    T.S.1 was born in 2002.  She has cerebral palsy, a seizure disorder, and is hard of hearing.  T.S.2 was born in 2003.  He is deaf.  T.S.3 was born in 2007.  T.S.4 was born in 2008. K.S., the Father, is the natural father of all four Children.  He is hard of hearing.  E.S., the Mother, is the natural mother of all four Children.  She is deaf.

¶7    The Children were removed from the Father's care at approximately 5:00 p.m. on July 22, 2011.  The Children had been found, at approximately 2:00 a.m., at the park across the street from the Father's apartment.  When they were returned to the Father's care, the Father was "passed out" on the couch and could not be awakened.

¶8    The State filed a Petition for Emergency Protective Services, Adjudication as Youth-in-need-of-care and Temporary Legal Custody on July 29, 2011.  The Children were

2

adjudicated youths-in-need-of-care on September 21, 2011, and the State was granted temporary legal custody. The District Court approved a treatment plan for the Father and ordered the Father to complete his treatment plan at a hearing on December 7, 2011. Temporary legal custody was extended on May 2, 2012, and on November 21, 2012. The State filed a Petition for Termination of Parental Right of Father on November 8, 2012, citing the statutory theory of "Failure of Court Ordered Treatment." In its petition the State requested that if the Mother relinquished her rights to the Children, the Court should grant permanent legal custody to the Montana Department of Public Health and Human Services (Department). The Father's termination hearing occurred on January 16, 2013.

¶9      In an affidavit supporting the State's July 29, 2011 Petition, the child protection specialist who investigated the case stated that the Father had often been heard screaming obscenities at his Children. She reported that the maintenance man at the Father's apartment building observed the Father would yell "all the time." She stated that the two older Children reportedly were missing approximately fifty percent of their days at school and being tardy a significant amount of the time. She also stated the Father had had three doors in his apartment repaired due to being "kicked in." When the child protection specialist investigated the home, she observed dog feces throughout the home, including on the Children's toys, blankets and clothes. She also observed nine empty liquor bottles on top of the Father's kitchen cabinets, as well as "numerous" beer cans on the cabinets and counter top. The Father admitted that he had been drinking since the Mother had left him, approximately two years earlier. When the child protection specialists asked the Father to

3

pack a bag for each of the Children, he had a difficult time finding clean clothes for them. When the Children unpacked their bags, dog feces were discovered mixed in with their clothing. It appeared at the time of the investigation that T.S.1's seizure medicine was out of date and that the Father had not been giving her the medication on a regular basis.

¶10     Nancy Reppe, LCPC, has counseled all four Children. She testified that the Children suffer from adjustment disorders and anxiety. T.S.2 has symptoms of Post-Traumatic Stress Disorder (PTSD). In counseling, T.S.2 has been the most vocal of the Children in disclosing physical abuse perpetrated by the Father against T.S.2 and his siblings. Because he remembered physical abuse at the Father's home, T.S.2 had a very difficult time with in-home visitations and did not make progress in overcoming those problems. Nancy Reppe described the trauma as extensive and added that T.S.2 and the others never felt safe and secure. T.S.4 has emotional issues and was very reserved during counseling. T.S.4 felt comfortable speaking if he was hiding underneath cushions and often hid in the corners of the room. Nancy Reppe believed that the Children would have to go through extensive counseling with the Father in order to feel safe and secure with him. Nancy Reppe stated this had not occurred during visitations and it could take an additional year before the Children might not be afraid of living with the Father.

¶11     T.S.1 and T.S.2 have been reunited with the Mother since February 14, 2012. T.S.3 and T.S.4 have been in foster care since removal. The Mother testified she is willing to continue attempting to parent T.S.3 and T.S.4 and in order to do so, she will need additional time to work with the State. Nancy Reppe observed the Mother with T.S.1 and T.S.2.

4

Nancy Reppe does not have any concerns about the Mother's ability to provide security and stability for T.S.1 and T.S.2.

¶12    The Father's treatment plan, to which he stipulated on December 7, 2011, required him to address his alcohol abuse by: (1) successfully completing chemical dependency treatment and following the recommendations of his counselors; and (2) completing random urinalysis (UA) testing. In regard to this task, the treatment plan states: "What will success look like: …[The Father] will complete chemical dependency treatment as recommended and will have maintained sobriety." (Emphasis original).

¶13    In October 2011, the Father entered and successfully completed inpatient treatment at Montana Chemical Dependency Center (MCDC). Upon completion of MCDC, the Father enrolled in aftercare with Gateway Community Services (Gateway). His counselor, Stan Coulter, testified that the Father was recommended for Level 2.1 treatment, which is intensive outpatient treatment. The Father completed intensive outpatient treatment and was stepped down to Level 1 treatment, which is outpatient treatment. The Father did not complete outpatient treatment and stopped attending outpatient treatment altogether around August 2012. While attending treatment at Gateway the Father had an interpreter. A problem arose with the interpreter services during the summer of 2012; but the Father did not advise the social worker of the problem until a week or two prior to the January 16, 2013, termination hearing. The District Court found by clear and convincing evidence that the Father failed to successfully complete chemical dependency treatment because he did not complete outpatient treatment.

¶14    Stan Coulter further testified that the Father suffers from high levels of anxiety. In order to address the anxiety, Stan Coulter recommended the Father receive mental health counseling. The Father never followed through on mental health counseling, nor did he address his anxiety. Managing his anxiety is crucial for the Father to ultimately maintain sobriety. The District Court found by clear and convincing evidence that the Father failed to successfully complete chemical dependency treatment because he did not follow the recommendation of his counselor to resolve his anxiety problems.

¶15    The Father was placed on the Department's UA list. The list is random and required the Father to call in Monday through Friday to find out if he needed to submit to a UA on any given day. Overall, the Father failed to call or show for 115 UAs since December 2011. The Father also produced several UAs that were positive for alcohol. The Father missed UAs every month except March 2012 and December 2012. Stan Coulter testified that a pattern of missed UAs indicates it is highly likely the individual is still using alcohol. Accordingly, in the realm of chemical dependency treatment, missed UAs are considered "hot" or positive UAs. The District Court found by clear and convincing evidence that the Father failed to comply with random UA testing.

¶16    The Father testified that the last time he drank alcohol was on September 2, 2012. He testified he has maintained his sobriety since then. This is only somewhat corroborated by the UAs; the Father has failed to submit to nineteen UAs since September 2. However, he has provided nine clean UAs since September 2. The Father has not been in chemical dependency treatment since prior to September 2. Stan Coulter testified that it was not likely

6

the Father maintained his sobriety on his own, without treatment. The District Court found by clear and convincing evidence that the Father has not yet been successful in maintaining sobriety.

¶17 The Father's treatment plan required him to complete a parenting evaluation and follow its recommendations. The Father completed this task.

¶18 The Father's treatment plan required him to participate in an in-home parenting program upon the return of his Children to his care. The Children were not returned home because of unresolved safety issues. One safety issue was his alcohol use. Another safety issue was the Children's concerns about physical abuse. Those concerns were based on their recent disclosures of physical abuse while previously in the Father's care. The Father did not successfully address either issue. The District Court found that the Father failed to complete this task.

¶19 The Father's treatment plan required him to attend visitations with the Children and to demonstrate during visitations that he is able to attend to the Children's physical and emotional needs. The Father attended his visitations, which occurred primarily at Healthy Mothers, Healthy Babies. After the Father obtained appropriate housing, visits during fall 2012 occurred at his home for approximately a month and a half. The visits were moved back to Healthy Mothers, Healthy Babies upon the Children's counselors' recommendations because the Children had unresolved safety concerns about being in a home environment with the Father. T.S.2 had a very difficult time with visitations because of the prior physical abuse and those difficulties were not resolved. Visitations remained supervised because of

7

the Children's concerns. The Father was not able to establish a close parent-child bond with any of the Children during the visitations. The District Court found that while the Father faithfully attended the visitations, he was ultimately unsuccessful in strengthening his bond with his Children and being able to meet the Children's basic needs.

¶20 The Father's treatment plan required him to obtain a safe and stable home environment. He obtained appropriate housing. The home environment was not safe and stable because unaddressed safety concerns prevented the Children from being returned to his care. The District Court found that the Father failed to complete this task.

**STANDARD OF REVIEW**

¶21 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion. *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174 (citing *In re T.W.F.*, 2009 MT 207, ¶ 17, 351 Mont. 233, 210 P.3d 174). A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. *In re E.Z.C.*, ¶ 19 (citing *In re A.J.W.*, 2010 MT 42, ¶ 12, 355 Mont. 264, 227 P.3d 1012). This Court will not disturb a district court's decision on appeal unless "there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." *In re D.B.*, 2012 MT 231, ¶ 17, 366 Mont. 392, 288 P.3d 160 (quoting *In re M.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047) (internal quotations omitted). We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re E.Z.C.*, ¶ 19 (citing *In re T.W.F.*, ¶ 17).

**DISCUSSION**

¶22    A district court may order termination of a parent-child legal relationship when the court makes a finding that the child is an adjudicated youth-in-need-of-care and both of the following exist:  (1) an appropriate treatment plan that has been approved by the court has not been complied with by the parent, or has not been successful; and (2) the conduct or condition of the parent rendering the parent unfit is unlikely to change within a reasonable time.  Section 41-3-609(1)(f), MCA.  Prior to entering an order terminating parental rights, a district court must adequately address each applicable statutory criterion and the party seeking termination of parental rights must present clear and convincing evidence to the district court that the applicable statutory criteria have been met.  *In re M.T.*, 2002 MT 174, ¶¶ 24, 26, 310 Mont. 506, 51 P.3d 1141.

¶23    *Did the Father preserve for review the issue of his treatment plan's appropriateness, when he did not timely object to the plan?*

¶24    The Father argues that the Department's treatment plan was inadequate because it did not mention his hearing impairment.  He argues that the District Court therefore abused its discretion by terminating his parental rights relying, in part, on its finding that he failed to complete the treatment plan.

¶25    "A parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate."  *In re D.S.B.*, 2013 MT 112, ¶ 10, 370 Mont. 37, 300 P.3d 702 (quoting *In re H.R.*, 2012 MT 290, ¶ 10, 367 Mont. 338, 291 P.3d 583) (internal quotations omitted).  When evaluating the appropriateness of a treatment plan,

we consider whether the parent was represented by counsel, whether the parent stipulated to the treatment plan, and whether the treatment plan takes into consideration the particular problems facing both the parent and the child. *In re H.R.*, ¶ 10 (citing *In re C.J.M.*, 2012 MT 137, ¶ 15, 365 Mont. 298, 280 P.3d 899). Where a parent fails to object to a treatment plan in a timely manner, the parent waives any argument regarding the propriety of the treatment plan. *See In re C.J.M.*, ¶ 16; *In re A.A.*, 2005 MT 119, ¶¶ 21-28, 327 Mont. 127, 112 P.3d 993 (parent who, with representation of counsel, negotiated and agreed to several treatment plans, and failed to object in a timely manner, waived her argument that portions of the plans were not appropriate).

¶26 The Father relies substantially on *In re D.B. and D.B.*, 2007 MT 246, 339 Mont. 240, 168 P.3d 691, to argue that a court must consider whether a treatment plan addresses a parent's disabilities in evaluating the plan's propriety. In *In re D.B. and D.B.*, however, the parent objected repeatedly to the treatment plan. *In re D.B. and D.B.*, ¶¶ 9-11, 15.

¶27 This Court will not consider the Father's argument regarding his treatment plan's propriety because he failed to object to the treatment plan in a timely manner. The Father's treatment plan came before the District Court for a dispositional hearing on December 7, 2011. The Father and his attorney stipulated to the treatment plan. The Father did not object to the treatment plan on the basis that it did not address his hearing impairment at that time. Nor did the Father inform the social worker of the problems with his sign language interpreter, which began in summer 2012, until a week or two prior to the January 2013 termination hearing. The Father's difficulty hearing does not appear to have been an

obstacle to his treatment until the summer of 2012, at least six months after the treatment plan was set in place. If the Father believed his hearing impairment was impeding his treatment, he could have objected to his treatment plan either at its inception or when the issue arose. He did not do so. If the Father was serious about completing the tasks he knew were necessary to regain custody of his Children, he should have made immediate efforts to remedy any difficulties with those tasks. Here, as in *In re C.J.M.* and *In re A.A.*, the Father waived any argument regarding the propriety of his treatment plan.

¶28 *Did the District Court abuse its discretion by terminating the Father's parental rights without also terminating the Mother's parental rights?*

¶29 The Father argues that the District Court abused its discretion when it terminated his parental rights without terminating the Mother's parental rights to the Children. He argues that although the two older Children have been reunited with their Mother, the two younger Children's placement is still uncertain. Therefore, he asserts, there is no harm in postponing termination of his parental rights and giving him more time to complete his treatment plan.

¶30 "[T]he best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights." *In re Custody & Parental Rights of D.A.*, 2008 MT 247, ¶ 21, 344 Mont. 513, 189 P.3d 631 (quoting *In re E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690) (internal quotations omitted). Section 41-3-609(3), MCA, provides that, in determining whether the condition of the parent that renders the parent unfit is likely to change within a reasonable time, a court should "give primary consideration to the physical, mental, and emotional conditions and needs of the

child." If a district court finds the statutory criteria supporting termination, set forth in§ 41-3-609(1), MCA, are met, no limitation requires the district court to consider other options prior to terminating parental rights. *In re E.A.T.*, 1999 MT 281, ¶ 33, 296 Mont. 535, 989 P.2d 860. Most importantly, children need not be left to "twist in the wind" when their parents fail to give priority to their stability and permanency. *See In re A.D.B.*, 2013 MT 167, ¶ 80, 370 Mont. 422, 305 P.3d 739.

¶31 The District Court concluded, by clear and convincing evidence, that the criteria for termination were satisfied because the Father failed to complete his treatment plan and the conduct or condition that rendered him unfit—specifically, his alcohol abuse—was unlikely to change within a reasonable time. The District Court concluded the Father "never successfully maintained sobriety for an appreciable period of time." In addition, the Father had not completed outpatient treatment, had not resolved or attempted to resolve his anxiety issues, and "was not engaged in therapy with his children to help his children resolve their fears of him." Accordingly, the District Court concluded the best interests of the Children would be served by terminating the Father's parental rights.

¶32 The Father's and the Mother's parental rights are separate and distinct matters. The District Court may determine that terminating the Father's parental rights is in the Children's best interests without factoring the Mother's situation into its decision. We hold that the District Court did not abuse its discretion when it declined the Father's request for additional time to complete his treatment plan. Nor did the District Court abuse its discretion when it determined terminating the Father's parental rights was in the Children's best interest and,

12

accordingly, terminated his parental rights. These Children have twisted in the wind for long enough.

¶33   Affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON

13