

DA 13-0381

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 4

IN THE MATTER OF:

C.B.,

    A Youth In Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DN 11-207
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General; Helena, Montana

    Theresa Diekhans, Child Protection Unit; Great Falls, Montana

Submitted on Briefs:  December 3, 2013
Decided:  January 7, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     K.B. (the Mother) appeals from the order of the Eighth Judicial District Court, Cascade County, terminating her parental rights.  We affirm.

## ISSUES

¶2     We restate the issues on appeal as follows:

1.     *Did the District Court abuse its discretion by terminating the Mother's parental rights due to her failure to complete an appropriate treatment plan to which she never objected?*

2.     *Did the District Court correctly conclude that the condition or conduct rendering the Mother unfit to parent was unlikely to change within a reasonable time?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     The Mother contests the District Court's order terminating her parental rights to her son, C.B.  C.B. is an Indian child, pursuant to the Indian Child Welfare Act (ICWA).

¶4     Prior to the incident that initiated this action, in 2011, the Department of Public Health and Human Services (the Department) had received twelve Child Protective Services (CPS) reports regarding the Mother's parenting, dating back to 1999.  All were seemingly related to her abuse of prescription drugs.  C.B. had been removed from the Mother's care eight times in seven years.

¶5     On September 14, 2011, the Department received a report that the Mother had been "drug seeking" and "asking people for money and pills."  She had recently been in the hospital due to a blood clot and had left C.B. in the care of a known prescription drug addict.  When Child Protection Specialist Nikki Wilkins (Wilkins) called C.B.'s school to investigate the report, she found he was not in school and no one had been able to contact the

2

Mother. Wilkins called C.B.'s emergency contact, a family friend. The friend expressed concern for C.B.'s well-being, noting that it appeared the Mother was abusing her prescription medications. The friend, once she was finally able to contact the Mother, picked up C.B. because the Mother sounded incoherent on the phone.

¶6 On September 16, 2011, Wilkins responded to the Mother's residence. Wilkins found the Mother "incoherent, unable to track the conversation, and physically unstable, walking very unbalanced and staggering." She interviewed C.B., who was seven at the time, at the emergency contact's residence. She found him "well-groomed" and "dressed appropriately for the weather." C.B. was concerned about his mother's well-being. He stated that she was sick and he had been taking care of himself. Although he could not cook, he had been preparing some food for himself. He was not able to get himself up to go to school in the morning. Wilkins placed C.B. in protective custody on September 16, 2011. He remains in kinship foster placement. He was adjudicated a YINC on November 15, 2011. It seems he has been doing well in foster care and that his behavior has generally improved; however, his therapist testified that he needs a secure and stable environment where he feels safe.

¶7 The District Court ordered the Mother to complete a treatment plan to deal with her substance abuse issues on March 26, 2012. The plan required, among other things, that the Mother complete a chemical dependency evaluation and follow all of the evaluation's recommendations. The Mother completed a chemical dependency evaluation and was diagnosed with an opioid dependence and a sedative, hypnotic or anxiolytic dependence. The evaluating professional recommended Level I outpatient individual and group sessions to address the root causes of her addiction. She began group sessions to address her

3

dependency issues, but missed many sessions. Later she visited another provider to get treatment for her opioid dependence and also sporadically attended counseling sessions there. Providers involved in treating her agreed that she did not seem engaged in her treatment and that she was unwilling to explore treatment options for the pain driving her drug use, other than the prescription to which she was addicted.

¶8 The treatment plan also required that the Mother complete a psychological evaluation. The Mother completed a psychological evaluation, which diagnosed her with opioid dependence, a depressive disorder and an anxiety disorder. The treating psychologist testified that the only reason the Mother did not make progress in treatment was her own unwillingness to truly engage in therapy. The psychologist noted that if the Mother were to fully engage in treatment, she might be able to start parenting in about six months to one year.

¶9 In addition, the treatment plan required the Mother to establish a safe and stable home environment. Although the Mother was living in a house, she owed taxes on it and struggled to pay utilities. Furthermore, she will not be living there during the coming year because she must serve a jail sentence.

¶10 The District Court found that the Mother had not complied with the conditions of her treatment plan and, accordingly, terminated her parental rights pursuant to § 41-3-609(1), MCA.

**STANDARD OF REVIEW**

¶11 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion. *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174 (citing *In re*

4

*T.W.F.*, 2009 MT 207, ¶ 17, 351 Mont. 233, 210 P.3d 174). A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. *In re E.Z.C.*, ¶ 19 (citing *In re A.J.W.*, 2010 MT 42, ¶ 12, 355 Mont. 264, 227 P.3d 1012). This Court will not disturb a district court's decision on appeal unless "there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." *In re D.B.*, 2012 MT 231, ¶ 17, 366 Mont. 392, 288 P.3d 160. We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re E.Z.C.*, ¶ 19 (citing *In re T.W.F.*, ¶ 17).

**DISCUSSION**

¶12    Although a parent's right to the care and custody of a child is a fundamental liberty interest, and must be protected by fundamentally fair procedures, the best interests of the children take precedence over the parental rights. *In re T.S.B.*, 2008 MT 23, ¶¶ 18-19, 341 Mont. 204, 177 P.3d 429. The best interests of the child are of "paramount concern" in a parental rights termination proceeding. *In re Matter of E.K.*, 2001 MT 279, ¶ 32, 307 Mont. 328, 37 P.3d 690.

¶13    A district court may order termination of a parent-child legal relationship when the court makes a finding that the child is an adjudicated YINC and both of the following exist: (1) an appropriate treatment plan that has been approved by the court has not been complied with by the parent, or has not been successful; and (2) the conduct or condition of the parent rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. In addition, § 41-3-604(1), MCA, provides that "[i]f a child has been in

5

foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Prior to entering an order terminating parental rights, a district court must adequately address each applicable statutory criterion and the party seeking termination of parental rights must present clear and convincing evidence to the district court that the applicable statutory criteria have been met. *In re M.T.*, 2002 MT 174, ¶¶ 24, 26, 310 Mont. 506, 51 P.3d 1141.

¶14 *Did the District Court abuse its discretion by terminating the Mother's parental rights due to her failure to complete an appropriate treatment plan to which she never objected?*

¶15 The Mother argues that the Department's treatment plan was inadequate because it did not take into account the pain that was the root cause of her addiction. The failure to respond to the Mother's medical condition in the treatment plan, the Mother argues, constituted a lack of good faith on the Department's part. The Mother contends that we should consider this argument even though she never explicitly objected to the treatment plan. Rather, in her reply brief, the Mother argues that she implicitly objected to the appropriateness of her treatment plan by "eliciting testimony that showed none of her professional care providers, that played a role in her treatment plan throughout the entire course of the proceedings, actually had any medical understanding of her condition."

¶16 " 'A parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate.' " *In re D.S.B.*, 2013 MT 112, ¶ 10, 370 Mont. 37, 300 P.3d 702 (quoting *In re H.R.*, 2012 MT 290, ¶ 10, 367 Mont. 338, 291 P.3d 583). When evaluating the appropriateness of a treatment plan, we consider whether the

parent was represented by counsel, whether the parent stipulated to the treatment plan and whether the treatment plan takes into consideration the particular problems facing both the parent and the child. *In re D.B.*, 2007 MT 246, ¶ 32, 339 Mont. 240, 168 P.3d 691. There are limited circumstances in which, if the parent timely objects to a treatment plan claiming it is inappropriate, we will require that the treatment plan be customized to meet the parent's needs, even where the parent is represented by counsel and has stipulated to the plan. *See In re D.B.*, ¶¶ 32, 34. As the Mother points out, the circumstances we have recognized involved parents with mental disabilities. *See e.g. In re D.B.*. Where a parent fails to object to a treatment plan in a timely manner, however, the parent waives any argument regarding the propriety of the treatment plan. *See In re T.S.*, 2013 MT 274, ¶ 25, 372 Mont. 79, 310 P.3d 538.

¶17 Here, the Mother was represented by counsel and stipulated to the plan. The Mother never specifically objected to the appropriateness of the treatment plan. Even the implicit objection she argues occurred did not happen until the termination hearing. In *In re T.S.*, we considered that, where a father waited to raise the issue of difficulties with a treatment plan due to his hearing impairment until two weeks before the termination hearing, his "objection" was not sufficiently timely. *See In re T.S.*, ¶ 27. Even assuming for the sake of argument that the testimony the Mother elicited regarding her providers' qualifications constituted an objection, raising that objection for the first time at the termination hearing was not timely. By failing to timely object to the plan, she has waived any argument about the plan's appropriateness on appeal. *See In re T.S.*, ¶¶ 25-26.

7

¶18 Even if we were to consider the merits of her argument, however, this case is distinguishable from *In re D.B.*, the primary case where we recognized that a disabled parent may need additional help to complete a treatment plan. We have explained that "[a] treatment plan is intended to be a good faith, joint effort by both the [Department] and the parent to preserve the parent-child relationship and the family unit." *In re A.A.*, 2005 MT 119, ¶ 20, 327 Mont. 127, 112 P.3d 993. In *In re D.B.*, an examining physician found, upon the parent's objection to a court-ordered treatment plan, that the parent's mild to moderate cerebral dysfunction rendered her less likely to succeed on the treatment plan without written instructions, checklists, and reminders. *In re D.B.*, ¶ 13. In that case, even a good faith effort on the parent's part to complete the treatment plan was not likely to succeed because she needed extra assistance in prioritizing and scheduling tasks. Her disability rendered her unable to complete the treatment plan without assistance because she could not comprehend what was required of her.

¶19 Here, unlike in *In re D.B.*, the Mother had the full capacity to comply with the treatment plan, unmodified. The Mother's brief explains that the second provider the Mother worked with has policies specifically targeted at patients who treat their pain with opioids. The Mother "was reluctant to" consider treatment options to address her pain other than the prescription to which she was addicted. Experts who evaluated the Mother testified that nothing was preventing the Mother from succeeding on her treatment plan except for her own unwillingness to make a good-faith effort to do so. The record reflects that the treatment plan did take Mother's particular problems into account; the chemical dependency evaluator made recommendations at the outset to address the root causes of the Mother's

addiction and her evaluating psychologist observed that she was not truly engaged in therapy to make the necessary changes in her life. Additional assistance from the Department was not the missing element here; the Mother's inability or unwillingness to explore alternatives to her pain management was the greatest obstacle to her success in treatment.

¶20 The Mother also argues that the treatment plan was inappropriate because it incorporated a hands-on parenting requirement, even though C.B. was moved out of state two weeks after the plan was set in place. The Mother's failure to complete this element, however, did not form the basis for the District Court's decision to terminate her parental rights.

¶21 *Did the District Court correctly conclude that the condition or conduct rendering the Mother unfit to parent was unlikely to change within a reasonable time?*

¶22 The Mother argues that the District Court could not determine that her condition was not likely to change within a reasonable time without hearing testimony about possible treatments for her medical condition. For instance, she argues that there was a surgical procedure that could have alleviated the pain associated with her condition, rapidly eliminating her prescription drug abuse.

¶23 As the Mother points out, however, a district court must look to a parent's past behavior as a predictor of future behavior in determining whether the parent's conduct or condition is likely to change within a reasonable time. *In re Custody & Parental Rights of D.A.*, 2008 MT 247, ¶ 23, 344 Mont. 513, 189 P.3d 631. The Mother has had twelve years to pursue options that would address the medical condition underlying her need for prescription drugs. There is no evidence that she has made any efforts to explore those options. Indeed,

9

there is some evidence that she has been resistant to options that might affect her access to her prescription. As the District Court observed, "[the Mother,] in over 19 months in this case[,] and [in] all the previous cases[,] has not addressed her chemical dependency issues[,] and has shown no change in her behavior." In the meantime, C.B. continues to suffer while his need for stability and permanency is not met. The District Court correctly concluded that the Mother's drug abuse was not likely to change within a reasonable time.

## CONCLUSION

¶24 The District Court concluded that the criteria for termination were satisfied because the Mother failed to complete her treatment plan and her prescription drug abuse was unlikely to change within a reasonable time, given her past conduct. The District Court also concluded that C.B.'s best interests would be served by terminating the parent-child relationship, particularly considering that he had been in out-of-home care continuously for nineteen months and for much of his life prior to the court's order. The District Court did not abuse its discretion in determining the statutory criteria had been met and terminating the Mother's parental rights.

¶25 Affirmed.

_/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER

10