DA 14-0692

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 144N

IN THE MATTER OF:

A.D.L., C.S.L., T.P., and J.P.,

     Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause Nos. DN 10-39, DN 10-40, DN 10-41, and DN 14-16 Honorable John W. Larson, Presiding Judge |

COUNSEL OF RECORD:

     For Appellant:

     Elizabeth Thomas, Attorney at Law, Missoula, Montana

     For Appellee:

     Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant Attorney General, Helena, Montana

     Kirsten H. Pabst, Missoula County Attorney, Diane Conner, Deputy County Attorney, Missoula, Montana

Submitted on Briefs: April 15, 2015
Decided: May 26, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by unpublished opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.P. ("Mother") appeals from the order of the Fourth Judicial District, Missoula County, terminating her parental rights to A.D.L., C.S.L., T.P., and J.P. ("children"). The issue on appeal is whether the District Court abused its discretion when it found that Mother had subjected the children to aggravated circumstances and terminated her parental rights.

¶3 The Department of Health and Human Services' ("Department") involvement with Mother dates back to 2005, when A.D.L. and C.S.L., then four years old and one year old, were removed from Mother's care due to her methamphetamine use. They remained separated for two years while Mother completed treatment at the Montana Chemical Dependency Center, individual and family therapy, and parenting skills classes. In 2008, Mother reunited with A.D.L. and C.S.L. and the Department closed the case.

¶4 In October 2010, Powell County officers found Mother and D.P. (father to T.P and J.P.) unconscious in a car with the young children. Mother pled guilty to felony possession of dangerous drugs (methamphetamine) and was sentenced to five years, with all suspended on the condition that Mother complete chemical dependency treatment.

Mother stipulated to the children's adjudication as youths in need of care and the children were placed in foster care.

¶5 In March 2011, Mother was admitted to Missoula Family Drug Treatment Court and she entered into a treatment plan. The plan required Mother to obtain inpatient treatment and Mother eventually enrolled in Michele's House, a residential treatment facility for women and their children in Billings, Montana. A.D.L., C.S.L., and T.P. joined their mother at Michele's House in June 2011. The family resided there until April 2012, when staff discharged Mother for rule violations. The children were again removed from Mother's care and placed in a foster home in Laurel, Montana.

¶6 In July 2012, Mother tested positive for methamphetamine and admitted to using heroin. The District Court revoked her suspended sentence and imposed a five-year sentence to the Department of Corrections. The Department and Missoula Family Drug Treatment Court continued to provide services to Mother, including intensive outpatient treatment. The children were relocated to Missoula and, in December 2012, they returned to Mother's care. In August 2013, Mother gave birth to J.P. and the Department dismissed its case against Mother the following month.

¶7 Mother's probation officer continued to supervise her and she had no violations until February 2014. On February 20, 2014, Mother's probation officer arrested her for probation violations. Officers found needles used for injecting methamphetamine in the pocket of a jacket in the baby's crib, as well as a used pipe. They noted that the toilet was backed up and the home was extremely dirty. The District Court revoked Mother's conditional release and recommended treatment.

3

¶8　The children were removed and placed at the Watson Children's Shelter in Missoula. First Step Center, an organization that conducts forensic interviews, evaluated the children. When staff asked T.P. about bruising on his neck and chest, he stated, "Mom whacked me right there . . . with her hand." T.P. indicated to his therapist that he was relieved to be at Watson's Shelter. First Step found a clear history of physical abuse with physical findings consistent with that history.

¶9　Additionally, the children were tested for illegal substances. T.P. tested positive for methamphetamine, amphetamine, and THC. C.S.L. tested positive for THC. Toxicologist Joseph Jones testified that the positive results indicated that the children had ingested and metabolized the substances, rather than simply been exposed through the air. He further stated that the test registers drugs ingested within the past three months.

¶10　The children met with Dr. Harkins-Schuelke, a psychologist who had previously treated them. Dr. Harkins-Schuelke diagnosed A.D.L. with Post-Traumatic Stress Disorder (PTSD) and Persistent Depressive Disorder, and C.S.L. with PTSD and Attention Deficient Disorder. T.P, who had recently displayed out-of-control behavior at school, was diagnosed with Oppositional Defiant Disorder. Dr. Harkins-Schuelke believed T.P. needed a therapeutic treatment facility to address his serious behavioral issues.

¶11　After Mother's arrest, the State filed a petition to terminate her parental rights and requested that the District Court conclude that a treatment plan was not necessary due to aggravated circumstances. In June 2014, the District Court held termination hearings and heard from numerous witnesses including Mother, Department Child Protection

4

Specialist Michael Sanders, Mother's various counselors and service providers, and Dr. Harkins-Schuelke. At the time of the hearings, the children were 13, 10, 6, and 10 months, and all parents were committed to the Montana Department of Corrections and unavailable to parent the children.

¶12 On September 2, 2014, the District Court issued an order terminating Mother's parental rights to the children. The District Court found that Mother's substance abuse was an aggravated circumstance and the State was not required to make reasonable efforts to reunify the family. The District Court found, by clear and convincing evidence, that Mother was unable to care for her children due to her incarceration and methamphetamine use and was unlikely to change within a reasonable time.

¶13 In a lengthy order, the District Court laid out the facts discussed above as evidence of the aggravating circumstances in this case. Specifically, the District Court found that Mother abused or neglected the children through physical abuse and exposure to unreasonable risks to their health. The Court noted that "[t]he risk of harm is primarily related to her addiction to and use of methamphetamine, even after several treatment programs." Finally, the District Court noted the numerous and prolonged removals of the children due to their mother's condition.

¶14 We review a district court's decision to terminate parental rights for abuse of discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691 (citations omitted). A district court abused its discretion only if it "acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in

substantial injustice." *In re D.B.,* ¶ 16 (citations omitted). Findings of fact are reviewed for clear error and conclusions of law for correctness. *In re D.B.,* ¶ 18 (citations omitted).

¶15 A court may terminate parental rights upon a finding of clear and convincing evidence that the child is an adjudicated youth in need of care, an appropriate treatment plan has not been complied with or not been successful, and the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. *In re D.B.,* ¶ 20; § 41-3-609(1)(f), MCA. In limited circumstances, the Department may seek termination without providing reunification services if the parent has subjected a child to an aggravated circumstance. Sections 41-3-609(1)(d), -423(2)(a), MCA. Such situations include, but are not limited to, abandonment, torture, chronic abuse, sexual abuse, and chronic, severe neglect of a child. *In re E.Z.C.,* 2013 MT 123, ¶ 21, 370 Mont. 116, 300 P.3d 1174; § 41-3-423(2)(a), MCA.

¶16 A parent's right to the care and custody of her child is a fundamental liberty interest and must be protected by fundamentally fair procedures. *In re T.S.B.,* 2008 MT 23, ¶ 18, 341 Mont. 204, 177 P.3d 429 (citations omitted). However, a district court must "give primary consideration to the physical, mental, and emotional conditions and needs of the children." *In re T.S.B.,* ¶ 19 (citations omitted). The best interests of the children "are of paramount concern . . . and take precedence over the parental rights." *In re T.S.B.,* ¶ 19 (citations omitted).

¶17 Mother argues that the record does not show clear and convincing evidence that she subjected the children to aggravating circumstances. She contends that the record does not support the finding that her drug use resulted in chronic abuse or neglect, and

that she demonstrated her ability to maintain sobriety over extended periods of time. While we do not ignore the difficulty associated with methamphetamine recovery, Mother's children must not be left to "twist in the wind" while she addresses her chemical dependency issues once again. *In re T.S.*, 2013 MT 274, ¶ 30, 372 Mont. 79, 310 P.3d 538 (citations omitted).

¶18 The District Court did not err when it determined there was clear and convincing evidence that Mother subjected the children to aggravated circumstances of chronic abuse or neglect. "Discrete instances of neglect, when viewed within a consistent pattern of similar behavior, provide a clear basis by which a district court can find 'chronic, severe neglect.'" In *re M.N.,* 2011 MT 245, ¶ 30, 362 Mont. 186, 261 P.3d 1047. Mother's behavior shows a clear pattern of serious substance abuse and criminal activity, followed by arrest and treatment, and eventually relapse. When Mother was using, the children endured intolerable circumstances including unsanitary home conditions, physical abuse of T.P., violence between the parents, neglect of their physical, educational, and mental needs, and exposure to methamphetamine and drug paraphernalia.

¶19 The Department's involvement with Mother and her children dates back to 2005. Since then, the children have been shuttled in and out of foster care, emergency shelter placements, and residential treatment facilities. For example, the oldest child, A.D.L., experienced eleven different placements over four years. As noted by Dr. Harkins-Schuelke, the children need a stable, safe, and permanent home to address their serious emotional and mental health needs. Dr. Harkins-Schuelke specifically noted the need for permanency for ten-month-old J.P., as he is in the critical developmental stage

7

where children learn to trust and bond, and without a secure parent figure may be unable to bond with anyone in the future.

¶20 Despite several past treatment plans, numerous inpatient and outpatient treatment programs, and services from a multitude of community organizations, Mother is unable to maintain sobriety and provide a safe and stable home for her children. The District Court did not err in concluding that Mother subjected the children to aggravating circumstances of chronic, severe neglect.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON